Based on today's docket is the case of People v. 1995 Paughco Motorcycle at that time. And we have Mr. Larry Darf of the appellant and the appellee has waived I believe. Yes. So you may begin when you're ready to Mr. Darf. May I please the court? Good morning. You are correct the appellee has waived and I'm going to try and make my comments succinct. I represent Michael Combs who was the innocent owner of a 1995 Paughco Motorcycle seized because of a traffic offense committed by his good friend George Gannon. My client ended up, well George Gannon ended up paying a $2500 fine for felony driving on a revoked license. My client ended up losing a motorcycle valued at over $15,000. In the court's judgment of April 24, 2017, they found that my client, Michael Combs, was a nominal party or a straw man and for some reason he was holding this motorcycle when it really belonged to Mr. Gannon. Additionally, they found that the seizure of Mr. Gannon's, or I'm sorry, Mr. Combs' motorcycle based upon the conduct of Mr. Gannon was not an Eighth Amendment violation of the excessive fine clause. So those are the two points I want to talk about today, whether or not he was a nominal party or a straw man and whether this claim violated the excessive fine clause, the seizure. Okay, now how long had he had the motorcycle? Was it in Colorado or someplace? Where was he? No, what the record indicates here was that in 2003, Mr. Combs purchased the motorcycle from Mr. Gannon for about $4,000. He then had it in his house up in Rockford, Illinois until 2011. So from 2003 to 2011, it was at Mr. Combs' house. In 2011, he transferred it down, trailered it down, it was non-functioning essentially. He trailered it down for Mr. Gannon trying to rebuild the point. And 2011 happened to be about when Mr. Gannon lost his license, is that correct? Correct. Well, there's no indication that he was ever seen driving his motorcycle or doing anything else until 2011. And there was a testimony from the detective that he'd been seen riding motorcycles in 2011 in this particular motorcycle. Wasn't there an issue about an arrest in Missouri in 2007? And was he riding that motorcycle then? Your Honor, I don't know the answer to that. The state in its brief said that was the case. I don't recall that being there, but if it's in the record, it's in the record. I don't think it changes the outcome of my argument. We can, for the sake of this argument, assume that he was. Doesn't that contradict his statement that it was in Rockford all that time? It does. It does. But I don't think it changes the outcome. Because the uncontroverted facts, well, first of all, through this, whether or not he was a straw man, would be judged against a manifest way of the evidence, standard of review. And in this case, the court found that Gannon had had the motorcycle since 2003 when he purchased it, in the sense that Mr. Combs never took possession of the motorcycle, essentially. Where was Mr. Combs living at that time? Mr. Combs was up in Rockford. Okay, the same place where the motorcycle was purchased? Correct. Well, I think it was purchased down here. And he transferred it out to Rockford, where he lived, and kept it up there. And when he was in Rockford, though, wasn't the other fellow living at the house? No, Mr. Gannon was living down here. And he brought the motorcycle down. The testimony was in 2010, 2011, that he brought the motorcycle down to Mr. Gannon to have it refurbished. But Gannon, did he live in Rockford at the time? No, Gannon lived down in Washington Park. Oh, okay. So, but if you look at page four of the court's judgment, her judgment is premised on the fact that this motorcycle was in Gannon's possession from 2003 until 2014 when it was seized. And that's a clear error in fact, which is against the manifest way of the evidence. It looks like, looking at the state's brief, that there were some other tickets that would indicate, according to the state, that Mr. Gannon was in possession of it on June 25th, 2004, when he got a ticket. And the July 4th, 07 date that I indicated. And August 27th, 2011, and riding on a revoked license. And November 19th, 2012, a revoked license in Belleville. And May 23rd, 2014, which led to the current case. You very well may have been driving on a revoked license on all those occasions. We don't contend that Mr. Gannon wasn't guilty of felony driving on a revoked. We contend that at the trial court level, it was never established that he was on this motorcycle. He was driving various motorcycles and different things. But the testimony was, and Mr. Gannon didn't appear for trial, but for Mr. Combs, the testimony was that he was given in 2011 to ride as part of his wedding ceremony in 2011. And Detective Schultz from the Grand City Police Department indicated that that's when he first saw him riding the motorcycle. But we contend that this testimony that he didn't have, that he had the motorcycle up in Rockford from, I'm sorry, the trial court found that he had the motorcycle down in Washington Park from 2003 to 2011. And that was clearly contrary to not only his testimony, which was that he had it up there and he had it down, but it was also contrary to the fact that he had it titled in his name. He had paid for the insurance, the registration, everything was titled in Mr. Combs' name and had continuously been titled and insured by him since 2003 to 2011. And as the court's aware, title to a motor vehicle is presumptively proves ownership of the vehicle, unless there's some way to rebut it. And in this case, there was just no rebuttal evidence. They wanted to say that he was a straw man for Mr. Gannon, but there's no reason to have a straw man. I mean, Mr. Gannon. Well, there is that he could not license the vehicle himself. I mean, obviously, the state is trying to show that this was a way around showing his ownership, Gannon's ownership, because he had lost his license due to DUIs. And although he could hold title, he couldn't get insurance. You can't get insurance if you don't have a valid driver's license. So, I mean, we're aware of, and obviously you're aware of what the contention is by the state. He also bought the motorcycle, supposedly, from Gannon, right? He did. But he would have had to have anticipated, he would have had to have been taking these actions back in 2003, anticipating something that would have happened in 2014. No, why do you say that? I'm not sure. Well, because the evidence was he continuously insured and registered this motorcycle to his Rockford residence. Right. And why would that be? Why is that proof that, in fact, it couldn't be a straw man situation? I mean, obviously, that happens a lot where there's money under the table. You know, Mr. Gannon could have been paying for the insurance and the registration, et cetera, in cash to him so that he could hold the title and have it licensed and insured, where he couldn't. Gannon couldn't. But I have a note, and maybe it's not accurate, but I show that he was seen by the police riding it in 2007, 2011, 2012. One, two, three times in 2014, in May, two times in May, and once in June of 2014. The only testimony on behalf of the state was Detective Shultz. And Detective Shultz testified that he saw him riding in 2011. He put it back to 2011 when he first saw him riding a motorcycle. He tried to say it was this motorcycle, but there was no real indication that he was actually on this particular motorcycle. But he said he saw him in 2014 on two occasions in May, and then they didn't act to seize the motorcycle until August. And in those two occasions, it's pretty clear he was on this Paco motorcycle. Which is owned by someone that was in Rockford but has been in the possession of Mr. Gannon and seen in the Granite City area throughout that period of time. Well, I think that's, I don't know if that's borne out by the record. I mean, he was seen riding, but yes, in the end, he was clearly there. But once again, I don't think that that is a, everybody I know who has an old motorcycle, an old car that they take her with and things along those lines, they do that over a course of many years. I don't think it's uncommon for Mr. Gannon to not, I mean, to have this motorcycle in his possession. For 11 years? Well, I mean, we can tell you it wasn't in it for 11 years. Do you agree it's a manifest weight standard? It is a manifest weight standard. For the, whether or not he was a straw man, whether he had standing to contest that, she found as a factual matter that he had kept the motorcycle in Gannon's possession even though he technically owned it since 2003. And we just don't believe that that was borne out by the record because he uncontroversially testified that he had it from 2003 and it wasn't until 2011. I know that there's testimony of Mr. Gannon being cited for driving on a road, but I don't recall there being any testimony that was, other than Mr., I mean, Detective Schultz saying he visually saw him on the motorcycle on 11, but that the other was necessarily on this particular motorcycle. But Gannon clearly has a long history of driving on a road on different vehicles, driving on a road to different locations. Well, the state argues that Gannon was revoked in September 2003 and that both of them being members of Hell's Angels, that Hell's Angels rules required Gannon to own an American motorcycle in order to ride with Hell's Angels. And how do you respond to that argument? Well, I mean, I don't know the rules of the Hell's Angels, but I think what Detective Schultz testified was that was his understanding of that. And Mr. Combs testified that he would be happy to give Mr. Gannon anything he had. But once again, the court's finding found that this was not gang activity, this was nothing related to the involvement with the Hell's Angels. That was a specific finding of hers, that this motorcycle, she never found that this related to... I'm not asking you about gang activity, I'm asking you about the allegation that that's one of the factors based upon the fact that this would be a straw man transaction, such that he had to have an American motorcycle in order to retain his membership in this organization. Well, you're right, but I believe you're correct in the sense that he had to have access to an American motorcycle. But a guy like Mr. Gannon, I don't think, is obviously not deterred by the fact that he's got a remote license or that he didn't have insurance or things along those lines. That's not a deterrent to him. I mean, he would have just kept the motorcycle and rode it. I mean, that's really... I think to say that these guys anticipate that there would be a forfeiture proceeding initiated in 2014 is just not supported by an appropriate assumption. I mean, these guys, Mr. Gannon in particular, the fact that he can't get in and drive an unregistered DUI or things like that was not a deterrent from him in driving any vehicle. Wasn't there evidence that Mr. Combs knew that Mr. Gannon had a remote license? No, it was to the contrary. To the contrary? To the contrary. There was no evidence whatsoever, including by Mr. Detective Schultz, that he knew that Gannon had a remote license. That was clear in the record. And I think McCoy made that finding that although he did not have knowledge of that, that it was a discretionary call still on her part as to whether or not she returned the motorcycle to him. But in this case, even though the standard of review is against the manifest waive of the evidence, forfeiture actions are not favored under the law and the proceeding should be strictly construed in favor of the claimant. And we do that in here with the testimony, the uncontroverted testimony that he had from 2003 to at least 2011 that he didn't know that he had a... his buddy that could ride or do whatever he wanted to do with it. Especially that he knew or he had no knowledge that he had a remote license. What this boils down to is that Mr. Gannon paid a $2,500 fine and Mr. Combs, who played no role in criminal activity and did not engage in any criminal activity, lost a motorcycle valued at over $15,000 by the testimony at trial. And we believe that that would violate the Eighth Amendment to the Constitution and just as this court found in the Hartrick case with the Harlan Davidson, which subsequently was overturned. But the analysis, I think in that case, they overturned it based upon basically the knowledge of the wife in that circumstance and her acquiescence to the husband driving, knowing fully well that he had prior DUIs and had a remote license. And she was on the motorcycle with him or on the trike as they called it. But the reasoning still stands. I mean, the Supreme Court didn't overrule this based upon any of the analysis prepared by this court in returning the motorcycle to the wife. In that case, once again, the Supreme Court reversed because the wife consented to her husband driving the trike. That's not what was involved in this case. There was no issue as to consent or knowledge. It was to the contrary. And secondly, they didn't put the Supreme Court found that there wasn't sufficient value of the vehicle in the record. And that was why in this case, Mr. Shane Furnish testified that he placed the value between $15,000 and $20,000. Thank you for your arguments, Mr. Dart. This is a matter under consideration for the ruling of the court.